IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

PAUL D. AMMERMAN,

              Plaintiff,

v.

NURSE SEAMAN,

              Defendant.

OPINION AND ORDER

17-cv-800-wmc
_____

     Pro se plaintiff Paul D. Ammerman, an inmate at Columbia Correctional Institution, is proceeding to trial in this civil case on an Eighth Amendment deliberate indifference claim against defendant Nurse Mary Seaman.  On June 8, 2021, I granted Ammerman's motion to compel certain discovery related how non-security staff at Columbia are supposed to respond to disruptive or threatening inmates.  (Dkt. 78.)  Ammerman now moves for sanctions, arguing that defendant has thwarted the court's order and engaged in other bad-faith conduct.  (Dkt. 97.)  He asks for $5,000, default judgment, and for the court to order defendant to search again for more documents.  (Dkt. 88 at 6, dkt. 99 at 8.)  I am denying this motion, and I am encouraging Ammerman to focus on preparing for his October 2021 trial.

     Some background will be helpful here: this case hinges on what occurred during a routine blood pressure check on May 5, 2017.  Ammerman alleges that he disclosed emergent symptoms that defendant declined to treat.  Defendant asserts that Ammerman did not say he was in distress, and did not obviously appear to be.  Relevant here, defendant further asserts that Ammerman threatened her, so she did what she had been trained to do in response to threatening inmates: end the appointment and call a security officer to the examination room to escort Ammerman out of the HSU.  (Dkt. 38 at 6.)

One way that Ammerman seeks to cast doubt on the assertion that he was threatening or disruptive is by confronting defendant with evidence that she did not follow the proper procedures for non-security HSU staff when dealing with such an inmate. To that end, Ammerman, in his third discovery request, noted that defendant had asserted having to ask for security, so he asked defendant to produce "the policy [or] procedure for employees contacting security and the outcome" and listed as examples of the information he sought: (1) how staff contacted security; (2) who removed disruptive inmates and (3) to where; and (4) what follow-up paperwork was required from staff who requested a security escort. (Dkt. 73-1 at 9.) In response, defendant generally objected to the request as overbroad, vague, and not proportional to the needs of the case, but also explained her understanding how and when HSU staff can contact security for help, and under what circumstances she would complete a follow-up incident or conduct report versus documenting the incident in the inmate's medical chart, as she did in this case. (Dkt. 39-1 at 10, 73-1 at 10-11, dkt. 88-9 at 2.) In recognition that policy concerning these asserted security procedures would be discoverable, I ordered defendant to produce available "[i]nformation such as a general policy or procedure, or one specific to HSU personnel, that speaks to how staff are trained to deal with disruptive or threatening inmates." (Dkt. 78 at 2.)

Defendant has produced several documents, but Ammerman still wants sanctions imposed because he argues that none of these documents is responsive to his production request. To begin, Ammerman maintains that defendant would have authored a formal conduct report if his behavior truly had been as threatening as she claims. (Dkt. 88 at 2.) But this is why defendant provided DAI policy 303.00.04, which concerns the inmate disciplinary process,

2

including when staff should author conduct reports versus giving a warning. (Dkt. 88-1 at 3.) I therefore give no credence to Ammerman's argument that this policy, which he claims supports his position, "does not answer" his production request asking for information about what paperwork staff need to complete after requesting help from security staff. (Dkt. 88 at 2.)

Defendant also provided HSU-specific policy and her training record. Ammerman argues that these documents do not fall within one of the four specific subparts of his production request. But that does not mean that this information should not have been produced, or that its production is indicative of an attempt to hide something else. For example, defendant produced DAI policy 500.11.03 with her training record. (Dkt. 88-3, dkt. 88-4.) The policy generally outlines the orientation a new HSU staff member receives, including "[r]elevant security training and health-related policies and procedures," and the training record lists defendant's specific training, including "[b]asic security training for non-uniform staff." (Dkt. 88-3 at 2, dkt. 88-4 at 2.) Taken together, along with defendant's discovery response explaining her understanding of how HSU staff can get help when confronted with a disruptive inmate, these documents are evidence that defendant has been trained on HSU security procedures, which is what Ammerman seeks to question defendant about. Although Ammerman asserts in reply that defendant should have also produced any security and related training documents, his request was consistently for policy and procedure.[1] (Dkt. 73-1 at 9, dkt. 88-9 at 1.)

As for DAI policy 500.10.32, Ammerman points out that it simply makes a general statement supporting "[t]he ability of HSU staff to provide health care" in "a safe and secure

---

[1] Defendant's supplemental response, including documents, to Ammerman's third discovery request is dated June 16, 2021. (Dkt. 88-15 at 5.) The next day, the court struck and reset the trial schedule, and extended the discovery cutoff through August 20, 2021. (Dkt. 85 at 6-7.) Ammerman does not allege that he properly submitted any follow-up request for the production of certain training documents in that time.

3

environment" and specifies who is responsible for ensuring safety. (Dkt. 88-2 at 1.) Duly noted. But not everything produced in discovery will be helpful to his case or useful at trial. Policy concerning HSU staff safety, however general, is relevant to the parties' dispute about how defendant responded to Ammerman during the appointment. *See* Fed. R. Civ. P. 26(b)(1) ("information within this scope of discovery need not be admissible in evidence to be discoverable"). Clearly, Ammerman still wants documentation of the procedure HSU staff are trained to follow to contact security for help.[2] If such documentation exists, then I would expect defendant to have produced it. Because what defendant has produced is responsive, and because I find credible defendant's assertion that neither she nor the institution have identified any other documents responsive to Ammerman's request, I will not impose sanctions, award default judgment, or order defendant to look again.[3]

Ammerman's remaining complaints are meritless. First, he disputes defendant's assertion made in response to the motion to compel I granted that he did not meet and confer before seeking relief from the court. That is water under the bridge. In granting the motion to compel, I rejected defendant's argument. (Dkt. 78 at 2.) Defendant does not reassert it here, and I will

---

[2] As for Ammerman's request for a policy or procedure documenting who removes disruptive inmates from the HSU and to where, he does not explain why the "where" has any bearing on what defendant, an HSU nurse, did or was supposed to do when confronted with a disruptive inmate. As for the "who," Ammerman does not seem to be disputing defendant's assertion that there is a correctional officer in the HSU available to help staff with safety concerns, noting in reply that there is an officer's desk around the corner from the examination room hallway. (Dkt. 99 at 5.)

[3] Regarding what else Ammerman thinks defendant should find, he asserts in reply that an unnamed guard told him there were other security policies out there, such as DAI policy 306.07.01 and DAI policy 306.00.34. (Dkt. 99 at 3.) However, DAI policy 306.07.01 concerns the use of force, which Ammerman's claim against defendant does not involve. As for DAI policy 306.00.34, Ammerman vaguely notes that it addresses "restrictions and precautions." (Dkt. 99 at 3.) But my order did not require defendant to produce any and all security policies and procedures, and I will not order production based on a guard's second-hand kibitzing.

not revisit it now. Nor will I address Ammerman's argument in reply that defendant's attorney acted in bad faith by filing her response to his motion for sanctions on July 15, 2021, *her court-ordered deadline to do so*. (Dkt. 99 at 6-8.) If Ammerman needed an extension to prepare his reply because of mail delivery or other issues within his institution, then he could have asked for one. But he didn't need an extension: he timely filed his reply. (Dkt. 99.)

Second, Ammerman accuses defendant of lying in some of her discovery responses, constituting "extreme circumstances" that merit default judgement.[4] (Dkt. 99 at 4.) Specifically, he says defendant's assertion that he could contact security through an intercom button in his cell is wrong, and therefore a lie. (Dkt. 88 at 4, dkt. 100 at 1.) I credit defendant's explanation, however, that as a nurse who did not often work at Columbia, she *mistakenly* recalled that there were intercom buttons in that institution's cells. Regardless, defendant will revise her discovery responses, so this is no reason for sanctions. (Dkt. 97 at 3.)

Similarly, Ammerman contrasts defendant's response to his first set of interrogatories– that she "stepped out into the hallway" and said "'Ammerman needs to leave' when [she] asked for security's help" (dkt. 73-1 at 4)–with her response to his second request for documents that she "spoke to security in person" rather than via telephone, panic button, or radio (dkt. 88-9 at 2-3). According to Ammerman, these statements are so inconsistent as to constitute intentional fabrication. Ammerman is incorrect. I see no material distinction between these assertions, as one is a more general version of the other. In any event Ammerman will have the opportunity

---

[4] Not all of these requests and responses were before me when I considered the motion to compel, and what I did have was submitted by defendant. (Dkt. 73.) To the extent that Ammerman *now* imputes bad faith to defendant for not submitting certain other requests and responses (such as his second set of production requests) in opposition to his motion to compel, that was not her responsibility. (Dkt. 88 at 4.) To the contrary, as Ammerman is aware from the pretrial order, the party *filing the motion* "must submit at the same time his (or her) other documents that show why the court should grant the motion." (Dkt. 30 at 10.)

5

at trial to question defendant about any relevant, perceived factual inconsistencies, and to provide his own version of what happened.

Next, Ammerman contends that, in light of defendant's training, it is disingenuous for her to state that she cannot "opine as to the precise procedures to be followed by security" staff while and after escorting an inmate from a location, and does not know what procedures security is generally supposed to follow. This is an acceptable response by defendant. She is not security staff, and her security training was for "non-uniform staff." (Dkt. 88-4 at 2.) Again, Ammerman will have the opportunity to confront defendant with her training record at trial.

Finally, Ammerman takes defense counsel to task for her letter response to his fourth request for discovery and inspection dated June 5, 2021. (Dkt. 88 at 4-5.) The request asked defendant to produce video and body camera footage taken on May 29, 2021, related to a series of medical events beginning on or about that date. (Dkt. 84, dkt. 84-4 at 1.) Three days later, defense counsel appropriately declined to produce the video, stating in a letter that the newly alleged 2021 events, involving nondefendants, are completely unrelated to the 2017 events that are at issue in this case. (Dkt. 88-12.) That was correct. The presiding judge has repeatedly explained to Ammerman why this is so. (Dkt. 95 at 3, dkt. 101 at 1-2.) As for defense counsel's contention in the letter that Ammerman's fourth discovery request was untimely because it afforded defendant far fewer than 30 days to respond, that also was correct, but it doesn't matter because defendant still responded, and her response was accurate: Ammerman clearly is not entitled to discover the video he was requesting.

Here's the bottom line: I find no basis to grant Ammerman's motion. Nobody is lying to him, nobody is withholding relevant information from him, and nobody has acted improperly. The fact that Ammerman believes otherwise does not make it so.

ORDER

IT IS ORDERED that plaintiff Paul D. Ammerman's Motion for Sanctions for Violation of Compel Orders (dkt. 88) is DENIED.

Entered this 19th day of August, 2021

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge