IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PAUL D. AMMERMAN,

                Plaintiff,                OPINION AND ORDER

    v.

                                          17-cv-800-wmc

NURSE SEAMAN,

                Defendant.

      *Pro se* plaintiff Paul D. Ammerman, an inmate at Columbia Correctional Institution, is proceeding to trial on his claim that Nurse Mary Seaman allegedly violated his Eighth Amendment rights during a routine blood pressure check on May 5, 2017, by ending the appointment without checking his blood pressure or otherwise treating the emergent symptoms that he had just disclosed to her. In advance of the final pretrial videoconference ("FPTC") to be held on September 29, 2021, the court issues the following opinion and order addressing: plaintiff's objection to defendant's motion to seal (dkt. #125), his renewed request for assistance with recruiting counsel (dkt #129), and the parties' respective motions in limine ("MIL") and related matters. The court will also circulate proposed orientation remarks, voir dire, jury instructions, and special verdict for discussion during the FPTC separately.

OPINION

I. **Plaintiff's Objection to Defendant's Motion to Seal (dkt. #125)**

      Plaintiff objects to defendant's motion to file under seal a blueprint of the Health Services Unit ("HSU") at Columbia, which was granted by the magistrate judge in a text-

only order on September 3, 2021. (Dkt. ##113, 117.) Defendant wishes to use the blueprint at trial to orient the jury as to the layout of the HSU, but does not want the blueprint to be publicly available on the docket for security and safety reasons. As the basis for his objection, plaintiff speculates that no one would have a use for the blueprints because escape would not be possible from the HSU; he also asks to be allowed a copy of the blueprints "a few hours before trial" to review. (Dkt. #125 at 1.) As an initial matter, plaintiff's subjective belief that escape would not be possible is insufficient reason to allow unfettered, public access to a prison blueprint, even if it does not reflect the current facility layout. As for his ability to review the blueprints before trial, defendant accounted for that in her motion to seal, indicating that plaintiff could do so upon request through its litigation coordinator. Since plaintiff does not indicate that he has had any difficulty making such arrangements, his objection will be OVERRULED, except that counsel is to ensure plaintiff's additional access to the blueprints for review under proper supervision for at least one hour immediately following the FPTC and provide a copy of the blueprint on the morning of trial for reference in the courtroom only.

## II. Plaintiff's Renewed Motion for Assistance with Recruiting Counsel (dkt. #129) and Related MIL #16 (dkt. #120 at 3)

Plaintiff renews his request for assistance with recruiting counsel in two forms, each presenting different reasoning. In his MIL #16, plaintiff renews his arguments that this case "is not straightforward," may include difficult medical terminology, and his mental illness may impede his ability to present his case. (Dkt. #120 at 3.) As for his

2

separate motion, plaintiff indicates that he did not present all of his pretrial filings in the correct format, including his list of possible witnesses in his exhibit list, rather than filing a separate list. (Dkt. #129 at 1.) Because the court will consider the substance of plaintiff's pretrial filings, rather than reject them simply as to their form, and because the court remains satisfied that plaintiff can present his case for the reasons stated in its prior orders declining to help plaintiff recruit counsel (dkt. ##68, 85), both plaintiff's motion and MIL #16 will be DENIED without prejudice. Indeed, based on his more recent filings, which remain understandable and relevant, plaintiff continues to demonstrate the ability to ably represent himself.

### III. Plaintiff's Motion in Limine (dkt. #120)

As a demonstration of his thoroughness, plaintiff seeks 24 other MIL orders from this court. Although many are straightforward, some are not. Accordingly, the court will endeavor to rule on them fully below, while reserving on some pending further discussion at the FPTC.

*First*, plaintiff seeks to sequester all non-party witnesses during trial. Since defendant offers no objection, plaintiff's MIL #1 is GRANTED as unopposed.

*Second*, he seeks to preclude defense counsel from referencing defendant's version of events in opening statements or voir dire until the court has ascertained that defendant intends to testify. Defendant objects, noting that she has already indicated that she will testify at trial. Regardless, the court agrees that defense counsel can discuss her *anticipated* testimony during opening statements, which are meant to acquaint the jury in advance with the facts both sides expect the evidence will show. Accordingly,

3

plaintiff's MIL #2 is DENIED.

*Third* and *fourth*, plaintiff seeks to prohibit the defense from calling any witnesses or introducing any evidence not disclosed before trial or "in compliance with the plaintiff's discovery demands." (Dkt. #120 at 2.) To the extent plaintiff seeks to relitigate discovery disputes, that time has passed. Moreover, plaintiff is requesting this court to order what Rule 37(c) generally indicates: "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." *See Musser v. Gentiva Health Svcs.*, 356 F.3d 751, 758 (7th Cir. 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless."). With the caveat that evidence used solely for impeachment purposes is exempt from the disclosure requirement, Fed. R. Civ. Pro. 26(a)(1)(A)(i)-(ii), (a)(3)(A), unless specifically asked for in affirmative discovery, plaintiff's MIL #3 and MIL #4 are DENIED as unnecessary, but with the expectation that both parties will follow the rules of evidence at trial and may object to witnesses or information that either side believes was not properly disclosed as required by the rules.

*Fifth*, plaintiff seeks a ruling from the court on whether certain conduct of the defendant demonstrates consciousness of guilt. Plaintiff does not specify the conduct to which he is referring, but cites to the section of a Wisconsin Court of Appeals decision addressing a criminal defendant's alleged attempt to induce someone to commit perjury. *See State v. Amos*, 153 Wis. 2d 257, 271-75, 450 N.W.2d 503 (Wis. Ct. App 1989). To

4

the extent plaintiff seeks to argue at trial that defendant or defense counsel perjured themselves in discovery responses or other pretrial filings, which he has repeatedly charged, the court has already ruled that there is no evidence of perjury in this case, and he will *not* be permitted to make such accusations at trial, although he can certainly argue that their version of events are not credible during closing argument. (Dkt. #102 at 5.) Accordingly, plaintiff's MIL #5 is DENIED.

*Sixth*, he seeks to prohibit the use of leading questions on direct examination for matters other than mere foundation. Plaintiff's MIL #6 is DENIED as unnecessary. As noted, the parties are to follow the rules of evidence at trial, and plaintiff may object to questions he believes are leading. Those objections will generally be sustained unless plainly preliminary to matters actually in dispute.

*Seventh*, plaintiff seeks a writ of habeas corpus for his appearance at trial. The writ was issued on September 8, 2021 (dkt. #126), so plaintiff's MIL #7 is DENIED as moot.

*Eighth,* he seeks to exclude any reference to the nature or identity of his convictions. Mirroring this motion, defendant's MIL #8 seeks to cross-examine plaintiff and one of his potential witnesses, Mathew Gebhardt, about their criminal convictions. Defendant asserts that plaintiff has been convicted of felonies in 1992, 2003, and 2013, while Gerhardt was convicted of a felony in 2015. Defendant is correct that generally, Rule 609 permits her to cross-examine plaintiff and Gebhardt about their felonies, subject to Rule 403, and that the Court of Appeals for the Seventh Circuit has stated that the "title, date and disposition of the offense" are appropriate to reveal. *United*

5

*States v. Lewis*, 641 F.3d 773, 783 (7th Cir. 2011).  However, there are limits on using such evidence if more than 10 years have passed "since the witness's conviction or release from confinement for it, whichever is later," Fed. R. Evid. 609(b), or the nature of the offense itself is overly prejudicial.

Plaintiff's prejudice concerns are well-taken given that the jury will already be aware of his incarceration, and the titles of his convictions may substantially outweigh their impeachment value.  Perhaps anticipating this issue, defendant suggests asking plaintiff:  "You have been convicted of three felonies, correct?"  And asking Gerbhardt: "You have been convicted of one felony, correct?"  If these witnesses answer, "yes," then defense counsel would be allowed no further questions on that topic.  If, on the other hand, either witness denies any of their convictions, they will have "opened the door" to more detailed questioning.  Plaintiff does not object to either question beyond correctly noting that two of his convictions are more than ten years old.  Defense counsel asserts that she will confirm at the final pretrial conference that it has also been ten years since plaintiff was released from confinement for either conviction.  Accordingly, the court will RESERVE both plaintiff's MIL #8 and defendant's MIL #8 pending further discussion at the final pretrial conference.

*Ninth*, plaintiff seeks to exclude any conduct reports he has received while in prison.  Defendant objects, asserting that plaintiff has received conduct reports for lying and has lied about receiving such reports, therefore making such evidence relevant to plaintiff's credibility and truthfulness.  Although Federal Rule of Evidence 608(b)(1) does not permit extrinsic evidence of misconduct, it generally allows cross-examination

6

regarding specific instances of misconduct if they are probative of a witness's character for truthfulness or untruthfulness. *See United States v. Abair*, 746 F.3d 260, 263-64 (7th Cir. 2014) (explaining cross-examination under Rule 608(b)). That said, the court is unsure what conduct reports defendant specifically has in mind, and whether they could be used as character evidence. Accordingly, the court will RESERVE this motion for further discussion at the final pretrial conference to afford defendant the opportunity to proffer the specific evidence she would use, as well as any legal authority permitting its use as character evidence.

*Tenth* and *fifteenth*, he seeks to appear in street clothes at trial and without shackles or visible restraints. Defendant does not oppose plaintiff's request to appear in civilian clothes, nor does defendant ask that plaintiff appear in restraints visible to the jury. Instead, defendant requests that plaintiff wear a "bandit" or invisible stun belt under his clothing to address the Department of Corrections' ("DOC") security concerns.

Consistent with this court's regular practice, therefore, plaintiff's motion to wear street clothes (MIL #15) is GRANTED, although as explained in the trial preparation order, it will be his responsibility to arrange for delivery of those clothes. (Dkt. #67 at 15.) Plaintiff's motion to appear without visible restraints (MIL #10) is also GRANTED, although the court will allow the DOC to apply an ankle or waist restraint concealed under plaintiff's clothing.

*Eleventh*, plaintiff seeks to prohibit generally evidence of routine practice that is insufficient to constitute a habit, presumably under Rule 406. Noting that "[a] party's testimony about his or her normal practice is not character evidence," defendant objects.

7

(Dkt. #128 at 16.) Because it is unclear to what evidence either party is referring, let alone whether such evidence would satisfy the standard for habit, or why either party believes such evidence will be probative, the court will RESERVE its ruling pending further discussion at the final pretrial conference.

*Twelfth*, plaintiff seeks to prohibit "conversations" barred by the "Dead man Statute" without specifying what evidence he believes would fall under this rule or why this rule is at all relevant in this case. (Dkt. #120 at 2.) Accordingly, plaintiff's MIL #12 is DENIED as unnecessary barring an additional proffer by plaintiff at the FPTC.

*Thirteenth*, he seeks, as a general matter, to exclude expert witness testimony due to a lack of qualifications or foundation. Defendant has disclosed her expert witnesses and her witness list. (Dkt. ##34, 108). Plaintiff does not specify any defense witness he would object to, or why, nor has he filed a *Daubert* motion. Accordingly, plaintiff's MIL #13 is DENIED, again subject to a specific proffer at the FPTC.

*Fourteenth*, plaintiff seeks to "preclude anticipated incompetent evidence." (Dkt. #120 at 2.) Plaintiff does not specify what evidence he believes should be excluded at trial and has not filed any separate objections to defendant's exhibit or witness lists. Accordingly, plaintiff's MIL #14 is DENIED.

*Seventeenth*, he seeks to obtain unspecified "discovery materials that the Defense refuses to allow" him to have. (Dkt. #120 at 3.) Plaintiff again does not indicate what those materials are. Regardless, discovery is closed. Moreover, to the extent he seeks to relitigate resolved discovery disputes, that time has passed as well. Similarly, to the extent he seeks to admit evidence regarding discovery disputes, he will not be permitted

8

to introduce evidence, testify, or argue about such disputes at trial. Any reference to discovery disputes has no relevance to the issues the jury will be asked to decide, and only stands to waste time and create confusion. Accordingly, plaintiff's MIL #17 is DENIED.

*Eighteenth*, plaintiff seeks "protection" against "retaliation" for filing this lawsuit, including conduct reports, harassment, and transfers. (Dkt. #120 at 3.) The court will not issue any order mandating prospective injunctive relief from speculative, future events and plaintiff does not allege that he is currently suffering any retaliation. Regardless, that is a matter to bring to the court's attention outside the presence of the jury. Accordingly, plaintiff's MIL #18 is DENIED.

*Nineteenth, twentieth, and twenty-first*, plaintiff seeks to prohibit evidence concerning what effect the verdict will have on the reputation of either party, or on defendant's patients, family, or friends, or on her nursing license. Without explaining its possible relevance, much less unduly prejudicial nature, defendant purports to object to prohibiting testimony about the effect of a verdict on her career, stating that it would be permissible for her to "testify about the repercussions this case could have had on her employment or nursing license." (Dkt. #128 at 17.) Accordingly, plaintiff's MIL #19 (reputation) and MIL #20 (patients, family, or friends) are GRANTED as unopposed. As for plaintiff's MIL #21 (career and license), the court is skeptical of the relevance of such testimony here, especially given that defendant is no longer working as a nurse, but will hold that motion in RESERVE should defendant wish to present a more developed argument on its relevance at the final pretrial conference.

9

*Twenty-second*, plaintiff seeks to exclude parol evidence. Defendant objects, asserting that she does not intend to discuss such evidence, and plaintiff does not specify what evidence he believes could be introduced in contravention of this rule of contract law. Nor can the court discern why this rule would be relevant here. Accordingly, plaintiff's MIL #22 is DENIED as unnecessary.

*Twenty-third*, he seeks "access to the witnesses before trial." (Dkt. #120 at 3.) Plaintiff does not specify which witnesses he would like access to, what kind of access he wants, or why. Moreover, trial is now imminent. If plaintiff wanted to interview any of defendant's witnesses, he could have contacted the witness or defense counsel informally or sought their deposition formally. Since discovery is now closed, the motion is DENIED.

*Twenty-fourth*, plaintiff seeks to admit evidence of other acts of defendant under Rule 404(b), which allows such evidence to show opportunity, intent, knowledge, or absence of mistake. Again, plaintiff makes a general motion without specifying what he seeks to admit or its relevance to his claim, so neither defendant nor the court can intelligently address its relevance. However, based on his objections to defendant's MILs as discussed below, plaintiff may be thinking of inmate complaints or similar evidence. Given the *possibility* that plaintiff may be able to come forward with evidence of this kind that satisfies the four requirements for admissibility under Rule 404(b), the court will hold plaintiff's MIL #24 in RESERVE pending further discussion at the final pretrial conference. Plaintiff should bear in mind that to be admissible, "proof of the other act must be directed towards establishing a matter in issue *other* than the defendant's

propensity to commit like conduct," among three other elements. *Okai v. Verfuth*, 275 F.3d 606, 610-11 (7th Cir. 2011) (emphasis added). Moreover, such evidence may still be excludable if unduly prejudicial under Rule 403.

*Twenty-fifth*, and finally, plaintiff seeks to prohibit either party from discussing how the resolution of this case could affect taxpayers. Defendant does not object. Accordingly, plaintiff's MIL #25 is GRANTED as unopposed.

## II. Defendant's Motion in Limine (dkt. #103)

Defendant seeks ten MIL orders of her own. *First*, defendant seeks to exclude as irrelevant and unfairly prejudicial, evidence about legal proceedings and inmate complaints and accusations involving her, except those related to this case. Plaintiff objects, generally stating that this type of information is other acts evidence allowable under Rule 404(b), but as just noted, he fails to develop that argument, specify what evidence he means to use, or describe its relevance to his claim. The court is inclined to grant the motion, but will RESERVE until the final pretrial conference should plaintiff wish to present a more specific proffer of whatever evidence he has in mind under Rule 404(b).

*Second*, defendant seeks to exclude any argument, questions, testimony, or evidence concerning why non-parties have left DOC employment. Plaintiff does not object to the substance of the motion, but rather to defendant's use of his deposition, arguing that defense counsel lied to him during deposition about whether a non-party was still a DOC employee. Since the court has already rejected that argument (dkt. #118 at 2), defendant's MIL #2 GRANTED as unopposed.

11

*Third*, and similar to her first MIL, she seeks to exclude any argument, questions, testimony, or evidence about other lawsuits against the DOC or its current or former employees. Since plaintiff does not object, defendant's MIL #3 is also GRANTED as unopposed.

*Fourth* and *fifth*, defendant seeks to exclude any argument, questions, testimony, or evidence related to the court's summary judgment decision in this case and to plaintiff's motion for injunctive relief. Plaintiff does not object to defendant's MIL #5 (injunctive relief), but does object to MIL #4, stating that the court's opinion constitutes other acts evidence admissible under Rule 404(b). The court disagrees. First, its opinion is not evidence. Second, the court already explained as much in its trial preparation order. (Dkt. #67 at 5-6.) Third, if plaintiff believes some legal or factual matter has been resolved for purposes of trial, he should ask the court to so advise the jury. Otherwise, neither party may refer to the court's summary judgment decision. Accordingly, defendant's MIL #4 and MIL #5 are GRANTED.

*Sixth*, she seeks to prohibit plaintiff or any of his lay witnesses from testifying that the alleged May 5, 2017, incident resulted in permanent or future physical or mental harm, and from seeking damages for such injury, without expert testimony supporting a finding of causation. *Seventh*, and relatedly, defendant seeks to prohibit plaintiff or any lay witnesses from testifying specifically that plaintiff had a seizure after his appointment that day, because "seizure" is a medical diagnosis. Plaintiff objects, stating that as a lay person, he can "discuss logically what he believes to be happening to his body." (Dkt. #130 at 2.)

Plaintiff would link his episode of tachycardia, fainting, and worsening symptoms to defendant's alleged failure to treat him earlier in the day during his appointment. Defendant is correct that plaintiff must submit expert testimony to establish causation, as well as the permanence of any injury, because such conditions are outside both a layperson's expertise and his personal knowledge. *See Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995) ("the medical effects of secondhand smoke are not within the ken of the ordinary person, so these inmates' lay testimony by itself cannot establish the showing of medical causation necessary to sustain [plaintiff's] claim"). At the same time, plaintiff may testify to the timing and nature of his own experience without using medical terminology.[1] Accordingly, defendant's MIL #6 is GRANTED.

Defendant is also correct that neither plaintiff nor any other lay witness may opine regarding medical diagnoses, medical tests and procedures, or other scientific or technical matters. *See United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (lay opinion testimony is not permissible regarding "specialized explanations or interpretations that an untrained layman could not make") (citations omitted). Again, however, plaintiff may testify about his *own* perception of his physical and mental health before and after the appointment with defendant, including his subjective belief as to what he was experiencing, just as other lay witnesses may testify about their personal observations of plaintiff's physical and mental health, provided that this testimony is not presented as an expert opinion. Similarly, defendant may challenge those observations

---

[1] In addition, to the extent defendant or other medical personnel will testify, plaintiff may be able to question them about definitions of medical terms or medical conditions on cross, provided he does not unfairly introduce undisclosed expert opinion testimony.

13

on cross-examination. Accordingly, defendant's MIL #7 is GRANTED IN PART and DENIED IN PART.

*Eighth*, defendant seeks an order permitting her to cross-examine both plaintiff and his potential witness Gebhardt about their past criminal convictions. For the reasons discussed above, the court will hold defendant's MIL #8 in RESERVE for further discussion at the final pretrial conference.

*Ninth*, she seeks an order limiting plaintiff to nominal damages of $1, if awarded by the jury at all. In his amended complaint, plaintiff requests punitive damages, and it is unclear whether he seeks compensatory damages as well. (Dkt. #10 at 5.) If he is, the Prison Litigation Reform Act requires a prisoner to prove some physical injury before recovering for damages for emotional harm. *See* 42 U.S.C. § 1997e(e) (prisoner may recover damages for emotional harm only if he proves that he suffered a physical injury because of defendants' conduct). Specifically, the Seventh Circuit has explained that "[a]lthough § 1997e(e) would bar recovery of compensatory damages 'for' mental and emotional injuries suffered, the statute is inapplicable to awards of nominal or punitive damages for the Eighth Amendment violation itself." *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003).

Defendant maintains that plaintiff's allegations and evidence show no more than *de minimus* symptoms that are insufficient to satisfy the physical injury requirement of § 1997e(e), including on-and-off chest pain, difficulty breathing, and passing out. *See Siglar v. Hightower*, 112 F.3d 191 193 (5th Cir. 1997) (defining "physical injury," under § 1997e(e), as an injury that is "more than de minimus, but need not be significant"). The

14

Seventh Circuit has not adopted the de minimus requirement set forth in *Siglar*, but has cited to *Siglar* as providing a definition of "physical injury" under § 1997e(e). *E.g.*, *Robinson v. Page*, 170 F.3d 747, 748-49 (7th Cir. 1999). Since *Robinson*, this court and other district courts in this circuit have also held that minor ailments (such as headaches, insomnia, periodic weight loss, fatigue, and muscle cramping) do not meet the physical injury requirement. *See Shaw v. Wall*, No. 12-cv-497-wmc, 2015 WL 1925045, at *2 (W.D. Wis. Apr. 28, 2015) (discomfort from stuffy nose, and "heart ache" due to discrimination); *Hoskins v. Crag*, No. 11-296-GPM, 2011 WL 5547460, at *3 (S.D. Ill. Nov. 15, 2011) (insomnia and headaches); *Agrawal v. Briely*, No. 02-C-6807, 2006 WL 3523750, at *14 (N.D. Ill. Dec. 6, 2006) (headaches); *Boyd v. Wright*, No. 09-CV-1357, 2011 WL 1790347, at *2 (C.D. Ill. May 10, 2011) (assertion of "periodic weight loss" insufficient to establish physical injury). Moreover, defendant points to an Eleventh Circuit decision, holding in the context of a motion to dismiss that "temporary chest pain, headache, and difficulty breathing" caused by "a smoky smell" in the van plaintiff was riding in were insufficient to surmount § 1997(e)'s physical injury bar, at least where "none of these things required immediate medical attention or evidence[d] physical injury besides discomfort." *Quinlan v. Personal Transport Services Co.*, 329 F. App'x 246, 248-49 (11th Cir. 2009).

Defendant's position is that the evidence does not suggest any physical injury. In his response, plaintiff emphasizes that while the plaintiff in *Quinlan* claimed symptoms triggered by an odor, his underlying conditions included high blood pressure, making chest pain and breathing difficulties more concerning. Moreover, although he initially

15

experienced these symptoms at a level he was "kind of used to" and could tolerate (dkt. #104 at 37:5-9), plaintiff attests that his chest pains and breathing difficulties worsened during lunch to the point that he asked to go back to the HSU within a few hours of his appointment with defendant, and once there, he received care, including an EKG documenting an elevated heart rate (dkt. #104 at 37:10-15, 39:12-41:10). Still, plaintiff acknowledges receiving no further treatment on May 5, 2017, nor does he appear to have required any. True, a subsequent echocardiogram approximately eight months later, in January 2018, showed some trace regurgitation in plaintiff's otherwise "grossly normal" pulmonic valve, there is *no* medical expert testimony or other medical evidence linking that finding to the May 5 events, and the final result noted no significant structural or valvular abnormalities. (Dkt. #110-14 at 3, 5.) Similarly, an exercise stress test performed on January 31, 2018, showed "no significant exercise-induced arrhythmias." (Dkt. #110-13 at 1.)

Accordingly, what remains is evidence of plaintiff's reported emergent symptoms on the morning of the appointment, which caused him discomfort and anxiety throughout the rest of the day, but apparently did not require medical attention beyond diagnostic testing. (Dkt. #104 at 11.) Thus, the court is inclined to grant defendant's MIL #9, but will hold it in RESERVE for further discussion at the FPTC.

*Tenth*, and finally, defendant seeks an order granting her qualified immunity based on plaintiff's statements made during his post-summary judgment deposition. Qualified immunity remains a close question in this case. At summary judgment, the court acknowledged that it must not frame the right in too general of terms to provide fair

16

notice, but emphasized that the qualified immunity analysis also turned on the plaintiff's version of the facts. (Dkt. #55 at 16.) In its analysis, the court acknowledged plaintiff's admission that he had been angry during the appointment, but denied defendant qualified immunity because the parties disputed whether plaintiff had been threatening -- defendant's proffered justification for ending the appointment without checking his blood pressure or otherwise treating him. Moreover, defendant admitted that had she known about the symptoms plaintiff claims he disclosed, she would have taken immediate steps to calm and evaluate him. (Dkt. #55 at 16-18.)

Defendant now returns to this question, as is her right, pointing to plaintiff's admission during his deposition that he *did* threaten her during the appointment, and arguing that in light of that admission, her statement about what she would have done had she known of plaintiff's emergent symptoms becomes irrelevant to the immunity analysis. Even taking the latter argument as true, the court does not read the deposition as the end of the matter. At his deposition, plaintiff acknowledged that he became angry during the appointment, but after defendant repeatedly refused to address a medication concern, and he further attested that the only threat he made to defendant was to sue her for refusing to address his medical needs. (Dkt. #104 at 29:15-32:16.) Plaintiff also attested that he did *not* yell at defendant or raise his voice, and was confrontational with her only to the extent that he told her that he would sue and she "could be held accountable" for her conduct. (Dkt. #104 at 31:7-32:16.)

In the end, this testimony is similar to what plaintiff alleges in his amended complaint: that plaintiff told defendant he was having chest pains and difficulty

17

breathing, and once plaintiff said defendant was "being deliberately indifferent to his medical needs," defendant got "belligerent" and ended the appointment. (Dkt. #10 at 3.) In other words, plaintiff did not appear to shift his version of events materially at his deposition, and the parties continue to dispute what actually occurred. Regardless, taking plaintiff's version of events as true, a jury may reasonably find that refusing further treatment of an inmate who has disclosed concerning, emergent symptoms because he has threatened to file a lawsuit amounts to deliberate indifference. Accordingly, defendant's MIL #10 is DENIED.

ORDER

IT IS ORDERED that:

1) Plaintiff's objection to defendant's motion to seal (dkt. #125) is OVERRULED.

2) Plaintiff's renewed motion for assistance with recruiting counsel (dkt. #129) is DENIED.

3) Plaintiff's motion in limine (dkt. #120) is GRANTED IN PART, DENIED IN PART, and RESERVED in part as set forth above.

4) Defendant's motion in limine (dkt. #103) is GRANTED IN PART, DENIED IN PART, and RESERVED in part as set forth above.

Entered this 28th day of September, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge